UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------x
                                                  :

*In re*                                          :        Chapter 11

ALERIS INTERNATIONAL, INC., *et al.*,  :       Case No. 09-10478 (BLS)

                                                  :        (Jointly Administered)
              Debtors.              :

                                                :        Proposed Objection Deadline:
                                                :            December 30, 2009, at 12:00 p.m. (ET)
---------------------------------------------------x  Proposed Hearing Date:
                                                                    January 5, 2010, at 11:00 a.m. (ET)

### MOTION OF ALERIS INTERNATIONAL, INC. PURSUANT TO SECTION 364(c)(2) OF THE BANKRUPTCY CODE FOR AUTHORITY TO ENTER INTO AN INSURANCE PREMIUM FINANCING AGREEMENT

Aleris International, Inc. ("*Aleris*"), a debtor in the above-referenced chapter 11 cases, as debtor and debtor in possession, submits this motion (the "*Motion*") for entry of an order pursuant to section 364(c)(2) of title 11 of the United States Code (the "*Bankruptcy Code*") authorizing Aleris to enter into an insurance premium financing agreement (the "*PFA*") with AFCO Credit Corporation ("*AFCO*"). A copy of the PFA is attached hereto as Exhibit "A." In support of the Motion, Aleris respectfully represents as follows:

### Summary of PFA Provisions Pursuant to Rule 4001(c)(1)(B)

1.      Pursuant to Rule 4001(c)(1)(B) of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and Rule 4001-2(a) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the following is a summary[1] of the provisions of the PFA:

---

[1] To the extent that there is any conflict between the summary of the PFA and the PFA, the PFA shall control.

| Annual Percentage Rate | 3.095% (PFA at p. 1) |
|---|---|
| Maturity | Seven months after the first monthly payment, or August 9, 2010. (PFA at p. 1) |
| Default Charges | If Aleris is late in making an installment payment by more than the number of days specified by law, Aleris will pay a delinquency charge not to exceed the maximum charge permitted by law. (PFA at p. 4) |
| Cancellation | AFCO may cancel the insurance policies after giving any required statutory notice. (PFA at p. 4) |
| Liens | AFCO is granted a security interest in all unearned premiums and dividends that may become payable under the insurance policies for whatever reason and loss payments that reduce the unearned premiums subject to any mortgagee or loss payee interests. Aleris also grants to AFCO its interest which may arise under any state insurance guarantee fund relating to any policy shown in the Schedule of Policies. (PFA at p. 4) |
| Borrowing Limits | The PFA provides that Aleris is being provided with $2,621,668.29 in credit. It does not contain any provisions for that amount to be increased. (PFA at p. 1) |
| Borrowing Conditions | None |
| Fees | There is a finance charge in the amount of $27,118.83. (PFA at p. 1) |
| Waiver/Limitation of Liability | Aleris agrees that AFCO's liability for breach of any of the PFA's terms or the wrongful exercise of any of its powers shall be limited to the amount of the principal balance outstanding under the PFA except in the event of gross negligence or willful misconduct. (PFA at p. 3) |
| Modification of the Automatic Stay | In the event Aleris defaults upon any of the terms of the PFA, AFCO may, without further modification of or relief from the automatic stay, cancel all insurance policies listed on the PFA or any amendment thereto, and receive and apply all unearned insurance premiums to Aleris' account |
| Claims | None |

## Background

2. The Debtors[2] are global leaders in the production and sale of aluminum

---

[2] The debtors in these cases (the "***Debtors***"), along with the last four digits of each Debtor's federal tax identification number, are Aleris (8280), Alchem Aluminum Shelbyville Inc. (8122), Alchem Aluminum, Inc. (5207), Aleris Aluminum Europe, Inc. (0921), Aleris Aluminum U.S. Sales Inc. (9536), Aleris Blanking and Rim Products, Inc. (7340), Aleris Light Gauge (7311), Aleris Nevada Management, Inc. (2935), Aleris Ohio Management, Inc. (0637),

rolled and extruded products, recycled aluminum, and specification alloy production. On February 12, 2009 (the "*Commencement Date*"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Further, in accordance with an Order of this Court, the Debtors' cases are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.

## Jurisdiction

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Aleris's Decision to Enter into the PFA with AFCO LLC

4. As set forth in more detail in the *Motion of Debtors for an Order Pursuant to Sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code (I) for Authority to (A) Continue Their Workers' Compensation Programs and Their Liability, Property, and Other Insurance Programs and (B) Pay Certain Obligations in Respect Thereof and (II) for Authorization of Financial Institutions to Honor and Process Checks and Transfers Related to*

---

Aleris, Inc. (6630), Alsco Holdings, Inc. (5535), ALSCO (7792), Alumitech of Cleveland, Inc. (1568), Alumitech of Wabash, Inc. (4425), Alumitech of West Virginia, Inc. (3237), Alumitech, Inc. (9351), AWT Properties, Inc. (5332), CA Lewisport, LLC (6561), CI Holdings, LLC (9484), Commonwealth Aluminum Concast, Inc. (7844), Commonwealth Aluminum Lewisport, LLC (7736), Commonwealth Aluminum Metals, LLC (8491), Commonwealth Aluminum Sales Corporation (8512), Commonwealth Aluminum Tube Enterprises, LLC (7895), Commonwealth Aluminum, LLC (5039), Commonwealth Industries, Inc. (5741), ETS Schaefer (9350), IMCO Indiana Partnership L.P. (3840), IMCO International, Inc. (8362), IMCO Investment Company (5738), IMCO Management Partnership, L.P. (2738), IMCO Recycling of California, Inc. (0255), IMCO Recycling of Idaho Inc. (8990), IMCO Recycling of Illinois Inc. (7227), IMCO Recycling of Indiana Inc. (4357), IMCO Recycling of Michigan L.L.C. (5772), IMCO Recycling of Ohio Inc. (1405), IMCO Recycling of Utah Inc. (2330), IMCO Recycling Services Company (0589), IMSAMET, Inc. (7929), Rock Creek (3607), Silver Fox Holding Company (1188), and Wabash (0708).

*Such Obligations* [Docket No. 9] (the "*Insurance Motion*"), in the ordinary course of the Debtors' businesses, the Debtors maintain a number of insurance programs for, among other things, automobile, aviation products, aircraft and related premises, commercial, crime, employed lawyers, fiduciary, pollution and remediation, property, punitive damages, umbrella, employers', directors' and officers' liabilities, and ocean cargo and war risks (the "*Insurance Programs*") with various insurance carriers, to comply with applicable laws and regulations and to protect against various risks inherent in the operation of their businesses. The order approving the Insurance Motion[3] authorized the Debtors to, among other things, maintain their Insurance Programs without interruption, on the same basis, and in accordance with the same practices and procedures as were in effect prepetition.

5.  On December 16, 2009, Aleris renewed eighteen policies associated with directors' and officers' liability, criminal liability, and other risks (the "*Financed Policies*").[4] In connection with such renewal, Aleris is obligated to pay $4,434,100.29 in premiums. Aleris previously has financed large portions of premiums associated with its Insurance Programs[5] in an

---

[3] *Order Pursuant to Sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Rules 4001(d) and 6004(a) of the Federal Rules of Bankruptcy Procedure (I) for Authority to (A) Continue Their Workers' Compensation Program and Their Liability, Property, and Other Insurance Programs and (B) Pay Certain Obligations in Respect Thereof and (II) for Authorization of Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations* [Docket No. 43] (the "*Insurance Order*").

[4] The Financed Policies include the following: (a) Policy Nos. BE27471600 and 27015743 with the National Union Fire Co. of Pittsburgh, PA; (b) Policy No. 18882810 with Chartis Specialty Insurance Company; (c) Policy Nos. XCP G24903564 and PGLN05086103 with ACE American Insurance Company; (d) Policy No. ARS-PD/09 with ACE Bermuda Insurance Ltd.; (e) Policy No. AEC 5917619-04 with American Guarantee & Liability Insurance Company; (f) Policy No. HIPD201947 with Hanseatic Insurance Co (Bda) Ltd; (g) Policy No. EXC 8634880 with Great American Assurance Company; (h) a policy with Magna Carta Insurance Ltd in the amount of $12,000; (i) Policy Nos. 9364-19-92 and 99066533 with Federal Insurance Company; (j) Policy No. 3310 16 66 with Chubb Atlantic Indemnity Ltd; (k) Policy No. 80 0269477 with Insurance Company of the State of Pennsylvania; (l) Policy No. CLP3011015 with Allianz Global Risks US Insurance Company; and (m) Policy Nos. N09NA08940, N09NA08941, and N09NA08942 with Lloyds of London. The Debtors reflected each of the predecessor policies in the exhibit attached to the Insurance Motion.

[5] The Debtors previously financed over $5,100,000 million pursuant to that certain Commercial Premium Finance Agreement, dated as of December 10, 2008, between Aleris and AFCO.

effort to preserve liquidity and better manage its cash flow. Aleris submits that continuing such business practice will enable it to preserve liquidity and best manage its cash flow during the pendency of its chapter 11 case.

## Relief Requested

6. Under the terms of the Financed Policies, the required premiums must be paid at or near the beginning of the policy periods. In light of the magnitude of the required premiums, Aleris determined that it would be prudent to conserve its liquidity by financing the premiums. Accordingly, by this Motion, Aleris seeks entry of an Order, substantially in the form attached hereto as Exhibit "B," authorizing Aleris to enter into the PFA.

## Salient Terms of the PFA

7. As noted above, annual premiums under the Financed Policies total approximately $4,434,100.29. Aleris has been able to secure $2,621,668.29 in financing under the terms of the PFA.

8. Under the PFA, Aleris will be obligated to repay the financed amount, plus a finance charge of $27,118.83, in seven monthly payments, which are scheduled to begin on January 9, 2010. Aleris' obligations to AFCO will be secured by (i) all amounts payable under the PFA, including any and all unearned premiums and dividends that may become payable under the Financed Policies, (ii) loss payments that reduce the unearned premiums, subject to certain conditions, and plus (iii) any interest in favor of Aleris which may arise under any state insurance guarantee fund related to the Financed Policies. *See* PFA at p. 4. Once a payment becomes delinquent by more than the number of days specified by law, AFCO will be entitled to assess Default Charges (as defined in the PFA) in an amount not to exceed the maximum charge permitted by law. PFA at p. 4. In the event that Aleris does not pay any

installment according to the terms of the PFA, AFCO also will have the right to cancel the Financed Policies after giving the requisite statutory notice, and the full balance owed under the PFA will come due, and, if permitted by applicable law, a cancellation charge may be assessed, up to a limit specified by applicable law. PFA at p. 4.

### Aleris Should Be Authorized to Enter into the PFA

9. Section 364(c)(2) of the Bankruptcy Code provides as follows:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
>
> . . .
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien[.]

These requirements are met here. AFCO has advised Aleris it will not agree to finance the Financed Policies absent liens on the collateral described above. Moreover, Aleris is not aware of any insurance premium finance company that would agree to extend credit on an unsecured basis.

10. Pursuant to that certain *Final Order Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Debtors to (I) Use Cash Collateral, and (II) Obtain Postpetition Financing and (B) Granting Adequate Protection* [Docket No. 299] (the "***DIP Order***"), the Court approved the Debtors' entry into the (a) Amended and Restated Debtor-In-Possession Credit Agreement, dated as of February 12, 2009 (as amended thereafter), and (b) Debtor-In-Possession Amended and Restated Credit Agreement, dated as of August 1, 2006 (as amended thereafter) (together, the "***DIP Financing Agreements***"). The Debtors' existing secured lenders, under the DIP Financing Agreements, agreed to permit the Debtors to create, incur, or assume certain

"Permitted Liens."[6] Accordingly, the DIP Financing Agreements, as approved by the DIP Order, authorize Aleris to grant liens to AFCO, and the terms of the DIP Order provide adequate protection against the diminution of value of the interests of the Debtors' prepetition and postpetition lenders.

11. In addition, the only assets in which AFCO will have a security interest under the PFA will be those sums payable under or in relation to the Financed Policies, and the security interest granted to AFCO will be retained only to secure Aleris's remaining payment obligations to AFCO under the PFA. Therefore, the security interest granted under the PFA will encumber only an asset of Aleris that will have come into being by virtue of the financing provided by AFCO pursuant to the PFA.

12. The Debtors believe that entry into the PFA represents the reasonable exercise of Aleris's business judgment and is permissible pursuant to the terms of the Insurance Order. Accordingly, on December 16, 2009 (the "**PFA Date**"), the Debtors executed the PFA. However, out of an abundance of caution and for the avoidance of doubt, the Debtors seek entry of an order approving the PFA and authorizing Aleris to enter into the PFA, *nunc pro tunc* to the PFA Date.

## Notice

13. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel to the official committee of unsecured creditors, (iii) counsel to

---

[6] Pursuant to Section 8.01(xvii) of that certain Amended and Restated Debtor-In-Possession Credit Agreement, dated as February 12, 2009, the Debtors were authorized to make "pledges . . . in the ordinary course of business securing liability for reimbursement or indemnification obligations to (including obligations in respect of letters of credit or bank guarantees for the benefit of) insurance carriers providing property, casualty or liability insurance to the Borrowers or any of their Subsidiaries." Section 10.01(xvii) of that certain Debtor-In-Possession Amended and Restated Credit Agreement, dated as of August 1, 2006 (and amended thereafter) permits Aleris to grant similar liens in connection with its insurance policies and related obligations.

Deutsche Bank AG New York Branch, as administrative agent under the ABL Agreements, the Term Loan Agreements, and the Debtors' postpetition revolving and term credit facilities; (iv) all parties who have requested notice pursuant to Bankruptcy Rule 2002; (v) counsel to Wilmington Trust Corporation, as trustee under the senior indenture dated December 19, 2006 and the new senior indenture dated September 11, 2007; (vi) Law Debenture Trust Company of New York, as trustee under the senior subordinated indenture dated December 19, 2006; and (vi) AFCO. Aleris submits that no other or further notice need be provided.

WHEREFORE Aleris respectfully requests entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: December 23, 2009
      Wilmington, Delaware

Paul N. Heath (No. 3704)
L. Katherine Good (No. 5101)
Andrew C. Irgens (No. 5193)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone: (302) 651-7700

-and-

Stephen Karotkin
Debra A. Dandeneau
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION