<u>Exhibit "E"</u>

**Liquidation Analysis**

# EXHIBIT E

## CHAPTER 7 LIQUIDATION ANALYSIS

### Basis of Presentation

The Debtors have prepared this Liquidation Analysis (the *"Liquidation Analysis"*) based on a hypothetical liquidation under chapter 7 of the Bankruptcy Code. It is assumed, among other things, that the hypothetical liquidation under chapter 7 would commence under the direction of a Court-appointed trustee and would continue for a period of time, during which time all of the Debtors' major assets would be sold or surrendered to the respective lien holders, and the cash proceeds, net of liquidation-related costs, would then be distributed to creditors in accordance with relevant law.

The determination of the costs of, and proceeds from, the hypothetical liquidation of the Debtors' assets in a chapter 7 case is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors, their management, and their advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual chapter 7 liquidation.

The Liquidation Analysis is a hypothetical exercise that has been prepared for the sole purpose of generating a reasonable good-faith estimate of the proceeds that would be realized if the Debtors were liquidated in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is used to satisfy the "best interest of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code, because it indicates whether the members of an impaired class that vote to reject the Plan will receive at least as much under the Plan as they would in a liquidation under a hypothetical chapter 7 case.

THE LIQUIDATION ANALYSIS IS NOT INTENDED TO, AND SHOULD NOT BE, USED FOR ANY OTHER PURPOSE. THE LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTORS' ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED IN AN ACTUAL LIQUIDATION. THIS ANALYSIS ASSUMES "LIQUIDATION VALUES" BASED ON APPRAISALS, WHERE AVAILABLE, AND THE DEBTORS' BUSINESS JUDGMENT, WHERE APPRAISALS ARE NOT AVAILABLE. THE RECOVERIES SHOWN DO NOT CONTEMPLATE A SALE OR SALES OF BUSINESS UNITS ON A GOING CONCERN BASIS. AS MOST OF THE DEBTORS' NON-DEBTOR SUBSIDIARIES RELY UPON THE CREDIT FACILITIES AVAILABLE TO THE DEBTORS AND CERTAIN NON-DEBTOR AFFILIATES, AS WELL AS OTHER FINANCIAL SUPPORT FROM THE DEBTORS, THE DEBTORS BELIEVE THAT A CONVERSION OF THE CHAPTER 11 CASES TO CASES UNDER CHAPTER 7 WOULD FORCE THE SHUTDOWN OF MOST OF THE OPERATIONS OF THE DEBTORS' NON-DEBTOR SUBSIDIARIES. IT IS POSSIBLE THAT ONE OR MORE OF THE NON-DEBTOR ENTITIES COULD BE SOLD ON A GOING CONCERN BASIS AND THAT PROCEEDS RECEIVED FROM SUCH GOING CONCERN SALE(S) WOULD BE MORE THAN IN THE HYPOTHETICAL LIQUIDATION. THE COSTS ASSOCIATED WITH THE SALE(S) WOULD BE LESS, FEWER CLAIMS WOULD BE ASSERTED AGAINST THE BANKRUPTCY ESTATES AND/OR CERTAIN ORDINARY COURSE CLAIMS WOULD BE ASSUMED BY THE BUYER(S) OF SUCH BUSINESS(ES). THE DEBTORS DO NOT BELIEVE THIS IS A LIKELY RESULT.

The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants. Limited independent appraisals were obtained in preparing the Liquidation Analysis. NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY. This Liquidation Analysis assumes that a liquidation of the Debtors would occur over approximately twelve (12) months. It is assumed that the chapter 7 trustee would arrange for the Debtors to terminate ongoing business and focus efforts to sell substantially all remaining assets in an orderly manner.

The Liquidation Analysis should be read in conjunction with the following notes and assumptions:

**Notes to Liquidation Analysis**

1. *Dependence on assumptions.* The Liquidation Analysis depends on estimates and assumptions. The Liquidation Analysis is based on a number of estimates and assumptions that, although developed and considered reasonable by the management and the advisors of the Debtors, are inherently subject to significant economic, business, regulatory and competitive uncertainties and contingencies beyond the control of the Debtors or their management and advisors. The Liquidation Analysis is also based on the Debtors' best judgment of how numerous decisions in the liquidation process would be resolved. Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such a liquidation, and actual results could vary materially and adversely from those contained herein.

2. *Additional unsecured claims.* The cessation of business in a liquidation will trigger certain claims that otherwise would not exist under the Plan absent a liquidation. Examples of these kinds of claims include various potential employee claims (for such items as severance and potential WARN Act claims) and executory contract and unexpired lease rejection damages. Some of these claims could be significant and might be entitled to priority in payment over general unsecured claims. To the extent proceeds remained after satisfying secured claims, any priority claims would be paid in full from the liquidation proceeds before the balance would be made available to pay general unsecured claims or to make any distribution in respect of equity interests. No attempt has been made to estimate other additional unsecured claims that may result from such events under a chapter 7 liquidation scenario because no funds are estimated to be available to the general unsecured creditors of the U.S. Debtors.

3. *Dependence on unaudited financial statements.* This Liquidation Analysis contains numerous estimates and is based upon the Debtors' unaudited financial statements as of September 30, 2009. Certain pro forma adjustments have been made including adjustments to reflect DIP borrowings subsequent to 9/30/09 as well as updated intercompany account balances as of 12/31/09 to reflect settlements resulting from the removal of ADH from the European cash pooling arrangement.

4. *Preference or fraudulent transfers.* No recovery or related litigation cost attributed to any potential avoidance actions under chapter 5 of the Bankruptcy Code, including potential preference or fraudulent transfer actions, is assumed within this Analysis.

5. *Chapter 7 liquidation costs and length of liquidation process.* The Debtors have assumed that all operations would cease immediately, and a limited group of personnel would be retained in order

to pursue orderly sales of substantially all the remaining assets, collect receivables, arrange distributions, and otherwise administer and close the estates. Thus, this Liquidation Analysis assumes the liquidation would be completed in substance within 12 months (though administrative wrap up costs regarding such items as tax reporting and employee benefit filings may reasonably extend beyond 12 months). In an actual liquidation the wind down process and time period(s) could vary thereby affecting recoveries. For example, if proceeds were available to distribute to creditors, the potential for priority, contingent and other claims, litigation, rejection costs, and the final determination of allowed claims could substantially impact both the timing and amount of the distribution of the asset proceeds to the creditors. Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such a liquidation.

Pursuant to section 726 of the Bankruptcy Code, the allowed administrative expenses incurred by the chapter 7 trustee, including, but not limited to, expenses affiliated with selling the Debtors' assets, will be entitled to payment in full prior to any distribution to chapter 11 administrative and other priority claims. The estimate used in the Liquidation Analysis for these expenses includes estimates for certain legal, accounting, broker, and other professionals, and potential fees and expenses payable to the chapter 7 trustee.

6. *DIP Lenders and Prepetition Lenders.* The Liquidation Analysis assumes holders of New Money Term DIP Claims and DIP ABL Claims are paid in full on their estimated claims resulting from funded debt and letters of credit issued and outstanding. The Liquidation Analysis further assumes that the U.S. Roll-Up Term Loan Claims, European Roll-Up Term Loan Claims, and European Term Loan Claims will either have a lien on, or will be allowed a priority claim under section 507(b) of the Bankruptcy Code against liquidation proceeds from their respective collateral. U.S. Term Loan claims are assumed to be prepetition unsecured claims because no value remains for these claims under any scenario.

7. *9019 Settlement.* The Liquidation Analysis assumes that the 9019 settlement described in Section V.J.4, entitled, "THE PLAN OF REORGANIZATION – Implementation of the Plan – The 9019 Settlement" in the Disclosure Statement is not in effect. It further assumes that Oaktree and Apollo would choose, to the maximum extent possible, to roll up their remaining roll up eligible European Term Loans before choosing to roll up any of their loans under the U.S. Term Loan Facility. It also assumes that the European portion of the New Money Term DIP Facility and European Roll-Up Term Loan Claims have priority over European Term Loan Claims.

8. *Snap Back Provision.* The Liquidation Analysis assumes that the "Snap Back" described in Section III.E, entitled "GENERAL INFORMATION – Events Leading to the Commencement of ADH's Chapter 11 Case" in the Disclosure Statement has occurred, and certain of the guarantees by and perfected security interests in assets of certain of ADH's non-debtor affiliates under the Prepetition Term Loan Agreements are in place.

9. *Accrued Interest.* The Liquidation Analysis assumes that the DIP ABL Credit Facility is repaid in full within four months after June 1, 2010 (i.e., by October 1, 2010) and that interest on the DIP ABL Credit Facility is accrued through and paid on that date. The Liquidation Analysis also assumes that the New Money Term DIP Facility is repaid in full within twelve months after June 1, 2010 (i.e., by June 1, 2011) and that interest on the New Money Term DIP Facility is accrued through and paid on that date.

The Liquidation Analysis assumes that holders of German Tranche of U.S. DIP Loan Claims, European Term Loan Claims, as well as European Term Loan Roll-Up Claims, are entitled to

assert Claims for postpetition interest against the non-Debtor guarantors through June 1, 2011, the estimated date of the completion of the liquidation and distribution of the proceeds.

The Liquidation Analysis assumes that holders of U.S. Roll-Up Term Loan Claims will have Claims for postpetition interest against the non-Debtor guarantors through June 1, 2011, the estimated date of the completion of the liquidation and distribution of the proceeds.

10. *Chapter 11 Administrative and Other Priority Claims.* Except for a carve-out for certain Bankruptcy Court, United States Trustee and professional fees and expenses as provided for in the DIP Credit Agreements, no distribution is shown in the Liquidation Analysis for estimated administrative or other claims arising from the Chapter 11 cases and entitled to priority under section 507 of the Bankruptcy Code.

11. *General Unsecured Claims.* No distribution is shown in the Liquidation Analysis for estimated General Unsecured Claims.

U. S. Debtors Liquidation Analysis [1]
As of September 30, 2009

*U S  $ in millions*

| | Notes | Net Book Value | Potential Recovery | |
|---|---|---|---|---|
| **Assets** | | | | |
| Assets | | | | |
| Cash & Equivalents | | $ 15 6 | 100% | $ 15.6 |
| Net Accounts Receivable (3rd party) | [A] | $ 150 6 | 79% | 119 7 |
| Intercompany Accounts Receivable | [B] | $ 47 0 | 64% | 30 0 |
| Inventory | [C] | $ 153 8 | 72% | 111 0 |
| Other Current Assets | [D] | $ 46.9 | 38% | 17 7 |
| Plant, Property & Equipment | [E] | $ 299.4 | 49% | 146.0 |
| Intangibles | | $ 138 3 | 0% | - |
| Equity Investments | [F] | $ 4,774 8 | 0% | 21.4 |
| Other Long-Term Assets | [G] | $ 41 4 | 6% | 2 5 |
| **Gross Asset Proceeds** | | | | $ 463.9 |
| **Expenses** | | | | |
| Chapter 7 Liquidation Administrative Expenses | [H] | | | (49 9) |
| **Total Net Proceeds Available for Distribution** | | | | $ 414.1 |
| **Secured Claims - ABL & New Money Term DIP Claims** | | | | |
| Carve Out ($12M maximum) | | | | (7 0) |
| DIP ABL Claim (including LCs) | | | | (152 1) |
| New Money Term DIP Claim | | | | (189 3) |
| Total Amount Paid to ABL and New Money DIP Term Claim | | | | (348.4) |
| **Remaining Proceeds** | | | | $ 65.7 |
| **Secured Claims - U.S. & European Term Loan Claims** | | | | |
| U S. Roll-Up Term Loan Claim | | | | (58 2) |
| U S  Term Loan Claims | | | | - |
| European Term Loan Claim | | | | (7 5) |
| Total Amount Paid to Secured Claims U S. Term Loan Claims | | | | (65 7) |
| **Remaining Proceeds** | | | | $ - |
| **Priority/Administrative/Unsecured Claims** | | | | |
| Priority/Administrative/Unsecured Claims | | | | - |
| Total Amount Paid to Priority/Administrative/Unsecured Claims | | | | - |
| **Remaining Proceeds** | | | | $ - |

[1] Includes U S  Debtors and certain U S  non-debtor affiliates whose assets guaranteed the DIP Credit Agreements  The assets of these non-debtor affiliates are not material

AS DESCRIBED IN GREATER DETAIL IN THE INTRODUCTION TO THIS LIQUIDATION ANALYSIS, THE LIQUIDATION ANALYSIS IS A HYPOTHETICAL EXERCISE THAT HAS BEEN PREPARED FOR THE SOLE PURPOSE OF GENERATING A REASONABLE GOOD-FAITH ESTIMATE OF THE PROCEEDS THAT WOULD BE REALIZED IF THE DEBTORS WERE LIQUIDATED IN ACCORDANCE WITH CHAPTER 7 OF THE BANKRUPTCY CODE WHEN COMPARED TO RECOVERIES UNDER THE PLAN. THE LIQUIDATION ANALYSIS IS NOT INTENDED AND SHOULD NOT BE USED FOR ANY OTHER PURPOSE. THE LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTORS' ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT

DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED IN AN ACTUAL LIQUIDATION.

[A] <u>Accounts Receivable</u>: Accounts receivable reflects a 79% recovery on net book A/R balances. Recovery is based on a review of certain ineligible accounts used to calculate the accounts receivable component of the borrowing base in accordance with the DIP ABL Credit Agreement with an additional discount applied to the remaining balance.

[B] <u>Intercompany Accounts Receivable</u>: Wind down scenarios for non-debtor affiliates were reviewed in order to estimate recovery on intercompany receivables.

[C] <u>Inventory</u>: Recovery rates for raw materials and finished goods inventory were based upon June 30, 2009 appraised rates of recovery for net orderly liquidation values with certain adjustments including adjustments to WIP inventory and for certain ineligibles as calculated in the inventory component of the borrowing base in accordance with the DIP ABL Credit Agreement.

[D] <u>Other Current Assets</u>: Estimated recoveries are based upon assessed collectability/realization of various short term hedge asset contracts and federal income tax receivables.

[E] <u>Plant, Property & Equipment</u>: The wind down period is estimated to take place over a period of 6 to 12 months. NO UPDATED APPRAISALS FOR U.S. DEBTOR'S ASSETS HAVE BEEN OBTAINED SINCE DECEMBER 19, 2006. AS SUCH, THE ASSUMED RECOVERY RATES ON THESE ASSETS REPRESENT A SIGNIFICANT RISK TO ACHIEVING THE VALUES REFLECTED IN THE LIQUIDATION ANALYSIS.

[F] <u>Equity Investments</u>: Wind down scenarios for non-debtor affiliates were reviewed in order to estimate proceeds from the equity interest of non-debtor affiliates.

[G] <u>Other Long-Term Assets</u>: Estimated recoveries are based upon assessed collectability/realization of various long-term hedge contracts and restricted cash.

[H] <u>Chapter 7 Liquidation Administrative Expenses</u>: Reflects net expenses associated with the liquidation process. The expenses include estimated corporate, operating and professional expenses as well as fees payable to the chapter 7 trustee.

**ADH Liquidation Analysis**
**As of September 30, 2009**

*U.S. $ in millions*

| Assets | Notes | Net Book Value | Potential Recovery | |
|---|---|---|---|---|
| **Assets** | | | | |
| Assets | | | | |
| Cash & Equivalents | | $ 0.0 | 100% | $ 0.0 |
| Net Accounts Receivable (3rd party) | [I] | $ 2.9 | 20% | 0.6 |
| Intercompany Accounts Receivable | | $ 900.8 | 0% | - |
| Inventory | | $ - | 0% | - |
| Other Current Assets | [J] | $ 33.9 | 0% | 0.0 |
| Plant, Property & Equipment | | $ - | 0% | - |
| Intangibles | | $ - | 0% | - |
| Equity Investments | [K] | $ 827.2 | 0% | 0.2 |
| Other Long-Term Assets | [L] | $ 3.4 | 0% | - |
| **Gross Asset Proceeds** | | | | $ 0.8 |
| **Expenses** | | | | |
| Chapter 7 Liquidation Administrative Expenses | [M] | | | (0.0) |
| **Total Net Proceeds Available for Distribution** | | | | $ 0.7 |
| **Secured Claims** | | | | |
| German Tranche of U.S. DIP Loan Claims | [N] | | | (0.2) |
| European Roll-Up Term Loan Claim | [O] | | | - |
| European Term Loan Claim | [P] | | | - |
| Total Amount Paid to Secured Claims | | | | (0.2) |
| **Remaining Proceeds** | | | | $ 0.5 |
| **Unsecured Claims** | | | | |
| European Term Loan Deficiency Claim | [P] | | | (0.3) |
| General Unsecured (3rd Party) | | | | (0.2) |
| Total Amount Paid to General Unsecured Claims | | | | (0.5) |
| **Remaining Proceeds** | | | | $ - |

AS DESCRIBED IN GREATER DETAIL IN THE INTRODUCTION TO THIS LIQUIDATION ANALYSIS, THE LIQUIDATION ANALYSIS IS A HYPOTHETICAL EXERCISE THAT HAS BEEN PREPARED FOR THE SOLE PURPOSE OF GENERATING A REASONABLE GOOD-FAITH ESTIMATE OF THE PROCEEDS THAT WOULD BE REALIZED IF THE DEBTORS WERE LIQUIDATED IN ACCORDANCE WITH CHAPTER 7 OF THE BANKRUPTCY CODE WHEN COMPARED TO RECOVERIES UNDER THE PLAN. THE LIQUIDATION ANALYSIS IS NOT INTENDED AND SHOULD NOT BE USED FOR ANY OTHER PURPOSE. THE LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTORS' ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED IN AN ACTUAL LIQUIDATION.

[I] Accounts Receivable: Accounts receivable reflects a recovery on remaining receivables associated with the acquisition of assets from the acquired parties.

[J] Other Current Assets: Includes foreign deferred tax assets and debt costs; therefore no cash recovery was assumed. Deferred tax assets represent temporary differences between internal and tax records. In a liquidation scenario, there are assumed to be no future proceeds, and therefore no opportunity to realize the tax asset benefit.

Similarly, in a liquidation scenario there would be no realization of a debt cost asset, as by definition, it represents a match of the cost of debt to the period that benefits from that debt; in a liquidation scenario this would no longer apply.

[K] Equity Investments: Wind down scenarios for non-debtor affiliates were reviewed in order to estimate equity interest proceeds to ADH.

[L] Other Long-Term Assets: Includes deferred tax; therefore no cash recovery was assumed. Deferred tax assets represent temporary differences between internal and tax records. In a liquidation scenario, there are assumed to be no future proceeds, and therefore no opportunity to realize the tax asset benefit.

[M] Chapter 7 Liquidation Administrative Expenses: Due to the lack of PP&E, Inventory and similar assets, expenses were assumed to be 5% of gross asset proceeds.

[N] German Collateral: In addition to the estimated liquidation proceeds from ADH, the German Tranche of U.S. DIP Loan Claims would also receive proceeds from the non-debtor affiliates in Germany pursuant to a direct pledge of certain assets. Based upon these additional proceeds, the German Tranche of U.S. DIP Loan Claims are estimated to be paid in full upon a hypothetical liquidation of the non-debtor affiliates in Germany.

[O] German Collateral: In addition to the estimated liquidation proceeds from ADH, the European Roll-Up Term Loan Claim would also receive proceeds from the non-debtor affiliates in Germany. Based upon these additional proceeds, the European Roll-Up Term Loan Claim is estimated to be paid in full upon a hypothetical liquidation of the non-debtor affiliates in Germany.

[P] European Collateral: In addition to the estimated liquidation proceeds from ADH and the U.S. Debtors, the European Term Loan Claim may also receive proceeds from non-debtor entities. These additional proceeds are estimated to be approximately $13 million based on a hypothetical liquidation of the non-debtor entities.