## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ALERIS INTERNATIONAL, INC., et al., | ) | Case No.  09-10478 (BLS) |
| | ) | |
| Reorganized Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Related to Docket Nos. 719 and 745 |
| | ) | |

Jeffrey R. Waxman
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19899

*Counsel for Holt Equipment
Company, LLC*

Paul N. Heath
L. Katherine Good
Andrew C. Irgens
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

*Counsel for the Debtors and the
Debtors-in-Possession*

### OPINION[1]

Before the Court is a motion for relief from the automatic stay (the "Motion") [Docket No. 719] filed by Holt Equipment Company, LLC ("Holt"), a creditor of Aleris International, Inc. ("Aleris" or the "Debtor"). The Debtor objected to the Motion (the "Objection") [Docket No. 745], and the Court has conducted argument on the Motion. For the following reasons, the Court will deny the Motion.

## I.  INTRODUCTION

The Motion requires the Court to determine whether a seller of goods has any rights to the goods against a debtor who has retained possession of the goods pursuant to a sales contract

---

[1]    Pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, made applicable to this contested matter by Rule 9014(c), this Opinion constitutes findings of fact and conclusions of law.

but has not paid for them.  Specifically, is a seller entitled to relief from the automatic stay to

gain immediate possession of goods for which the debtor has not paid if the seller has neither

possession of the goods nor a perfected security interest in them?  Based on an analysis of the

relevant provisions of title 11 of the United States Code (the "Bankruptcy Code") and the

Uniform Commercial Code (the "U.C.C."), the Court concludes that under these circumstances

the seller is not entitled to relief from stay for the purpose of gaining immediate possession of

such goods because the seller's unperfected security interest is subject to avoidance.

## II. **BACKGROUND**

On January 12, 2009, Aleris executed a customer purchase order form (the "Sales

Agreement") in Kentucky pursuant to which Holt sold a 2007 Deere 644J 4WD Loader, Serial

No. DW844JX613081 (the "Equipment") to Aleris for the sum of $141,173.98.  Due to a prior

rental arrangement between the parties, Aleris was already in possession of the Equipment since

September 2008.  The Sales Agreement included the following provision (the "Title Provision"):

> ACKNOWLEDGMENTS:  I (We) promise to pay the balance due
> (Line 9) shown hereon in case or to execute a Time Sale
> Agreement (Retain Installment Contract), or a Loan Agreement for
> the purchase price of the Equipment, plus additional charges
> shown thereon, or to execute a Lease Agreement, on or before
> delivery of the Equipment ordered herein.  Despite physical
> delivery of the Equipment, title shall remain in the seller until one
> of the foregoing is accomplished.

Based on the evidence before the Court, the parties executed no other agreements with

respect to the Equipment.  According to Holt, Aleris has used the Equipment at Aleris's facility

in Morgantown, Kentucky without remitting any payments to Holt as required by the Sales

Agreement.

2

On February 12, 2009 (the "Petition Date"), Aleris, along with certain of its affiliates, voluntarily commenced its chapter 11 case in the United States Bankruptcy Court for the District of Delaware.  On June 25, 2009, Holt filed the Motion seeking relief from the automatic stay to permit it to take immediate possession of the Equipment.  On April 29, 2010, Holt filed a limited objection to the Debtors' First Amended Joint Plan of Reorganization (the "Plan"), pursuant to which it objected to any impairment of its rights in and to the Equipment under the Plan, thereby preserving its rights, if any, to the Equipment.  On May 10, 2010, the Debtor stated in its omnibus reply to filed objections to Plan confirmation that it had communicated to Holt's counsel that the Debtor would honor whatever rights the Court determines Holt has in the Equipment.  In reliance upon this communication, Holt withdrew its objection to Plan confirmation.  On May 13, 2010, the Court confirmed the Plan.  Pursuant to the Plan, the Debtor transferred all of its assets to the reorganized entity and was thereafter dissolved on June 1, 2010.

The relevant facts as they relate to the Motion are undisputed.  The parties agree that they entered into the Sales Agreement pursuant to which Holt sold the Equipment to Aleris.  The parties also agree that Aleris has been in possession of the Equipment since September 2008, such that the Equipment had been delivered to Aleris prior to the execution of the Sales Agreement.  The parties do not agree, however, on the legal consequences of this sequence of events.

Holt contends that it, and not Aleris, owns the Equipment, and that it seeks relief from the automatic stay simply "[o]ut of an abundance of caution . . . to take possession of its own property."  Motion ¶ 6.  In support of its ownership claim, Holt relies on the Title Provision in the Sales Agreement.  Holt asserts that pursuant to this provision, Holt has retained title to the

Equipment under U.C.C. § 2-401(3), and as such, the Equipment is not property of the Debtor's estate and is therefore not subject to the automatic stay.

In the alternative, Holt argues that 11 U.S.C. § 362(d)(1) entitles it to relief from stay for "cause" because the Debtor has not provided Holt with adequate protection of its asserted ownership interest in the Equipment even though the value of the Equipment depreciates daily due to the Debtor's continued use. Absent relief, Holt asserts that the Debtor will receive a windfall by being permitted to use the Equipment without being ordered to remit payments or relinquish possession to Holt.

The Debtor objects to the Motion on the grounds that Holt holds neither title to the Equipment nor any valid interest in the Equipment entitling it to relief from stay. First, the Debtor contends that Holt has failed to assert a valid ownership claim because title to the Equipment has already vested in Aleris notwithstanding the Title Provision in the Sales Agreement. Second, the Debtor asserts that Holt does not have a valid security interest in the Equipment and is thereby not entitled to relief from stay. Relying on U.C.C. § 2-401(1), the Debtor claims that Holt retained, at most, a security interest in the Equipment through the operation of the Title Provision. However, because Holt did not perfect its security interest, the Debtor argues that Holt's rights are limited to those of an unsecured creditor.

In the alternative, the Debtor insists that the Equipment is vital to its business operations. Therefore, should the Court find that Holt has a valid interest in the Equipment sufficient to warrant relief from stay, the Debtor requests an opportunity to provide Holt with adequate protection payments. This matter has been sufficiently briefed and argued, and it is ripe for decision.

4

### III.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (E), (G), and (K).

### IV.  DISCUSSION

To prevail on the Motion, Holt may rely on one of two alternative legal theories: (1) Holt holds title to the Equipment; or (2) Holt holds a valid security interest in the Equipment.  If Holt holds title to the Equipment, then it may be entitled to take immediate possession.  If Holt holds an unassailable security interest in the Equipment, then Holt may be entitled to relief from stay or adequate protection payments.

**A.    The Effect of the Debtor's Possession of the Equipment under U.C.C. § 2-401**

As a preliminary matter, Article 2 of the U.C.C. governs the transaction between Holt and Aleris pursuant to which the Equipment was sold under the terms of the Sales Agreement.  The parties' respective interests in the Equipment are determined primarily by U.C.C. § 2-401, and both parties cite to this provision in support of their respective positions.  As such, it is appropriate for the Court to begin with the text of the statute.  As adopted in Kentucky, U.C.C. § 2-401 states, in relevant part:

> (1)  Title to goods cannot pass under a contract for sale prior to their identification to the contract, and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this chapter.  Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the article on secured transactions (Article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

5

> (2)  Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; . . . .
>
> (3)  Unless otherwise explicitly agreed where delivery is to be made without moving the goods,
>
>> (a)  if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or
>>
>> (b)  if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting.

KY. REV. STAT. ANN. § 355.2-401 (West) (citation omitted).

Several rules pertaining to the passage of title in the context of the sales transaction at bar are set forth in U.C.C. § 2-401.  First, although parties may contract around the default rules articulated in § 2-401(1), (2), and (3), such latitude is bounded by the limitations set forth in § 2-401(1).  Second, once a seller relinquishes possession of sold goods, § 2-401(1) mandates that any retention or reservation of title by the seller provided for in the sales contract is deemed only a reservation of a security interest in such goods.  Third, § 2-401(3) provides that if no delivery is required, title to identified goods passes at the time and place at which the contract is executed.

## 1.    Holt's Retention of Title to the Equipment

Holt argues that pursuant to U.C.C. § 2-401 and the Title Provision in the Sales Agreement, Holt retained title to the Equipment, despite the fact that the Equipment had been delivered to and has remained in the possession of Aleris.  The Court disagrees.

6

While the interplay of § 2-401(1), (2), and (3) is an issue of first impression in this

District and in the Third Circuit, another bankruptcy court has already grappled with the

relationship between these three provisions.  In re J. Adrian Sons, Inc., 205 B.R. 24 (Bankr.

W.D.N.Y. 1997).  The court in In re Adrian Sons explained that

> [b]ecause § 2-401(1) deals with express agreements regarding
> passage of title as a general rule, § 2-401(2) and § 2-401(3) can
> only be viewed as dealing with certain common fact patterns
> in which the parties did not make express agreement regarding
> passage of title, and where, for example . . . (as here) the goods are
> already in possession of the buyer.

Id. at 26-27.[2]

Thus, although parties may explicitly agree in the contract how and when title to sold

goods passes from the seller to the buyer, parties may not avoid all of the default rules set forth

in these provisions because any modification is nonetheless "[s]ubject to *these* provisions and to

the provisions of the article on secured transactions (Article 9)."  U.C.C. § 2-401(1) (emphasis

added).  Specifically, irrespective of any agreement between the parties, a seller may never retain

title to goods that have already been delivered to the buyer, and any such retention is always

reduced to a mere security interest in the delivered goods.[3]

While Holt concedes that § 2-401(1) and (2) limit the parties' ability to contractually

determine the passage of title, Holt contends that § 2-401(3) independently allows parties to

---

[2]      See also New England Yacht Sales, Inc. v. Comm'r, 504 A.2d 506, 509 (Conn. 1986)
(explaining that § 2-401(1) contains "baseline" principles, while subsections (2) and (3) provide
"objective tests" to be applied in the absence of a § 2-401(1) agreement).

[3]      Marlow v. Oakland Gin Co. (In re The Julien Co.), 128 B.R. 987, 995-96  (Bankr. W.D.
Tenn. 1991), aff'd on other grounds, 44 F.3d 426 (6th Cir. 1995); In re Gull Air, Inc., 73 B.R.
820, 824 (Bankr. D. Mass. 1987); Jahn v. Quintrell (In re Tom Woods Used Cars, Inc.), 21 B.R.
560, 565 (Bankr. E.D. Tenn. 1982).

agree—without limitation and notwithstanding the other provisions in § 2-401—on the terms on

which title would pass from the seller to the buyer.  During oral argument, Holt defended its

position by calling the Court's attention to the fact that § 2-401(1) mentions the effect of a

reservation of title and § 2-401(2) mentions the effect of a reservation of a security interest,

whereas § 2-401(3) does not mention the effect of a reservation of title.  On the basis of this

omission in § 2-401(3), Holt urges the Court to recognize its retention of title to the Equipment, a

proposition that contravenes the plain text of § 2-401.[4]  By its request, Holt also ignores at least

three decades of established caselaw.  Federal and state courts alike have held that while a seller

may retain or reserve title to sold goods pursuant to a sales transaction, U.C.C. § 2-401(1)

provides that after such goods have been delivered to the buyer, the effect of such a retention or

reservation is nothing more than a reservation of a security interest in the delivered goods.[5]

Thus, to the extent that Holt effectively reserved title to the Equipment pending the fulfillment of

---

[4]    In re J. Adrian Sons, 205 B.R. at 26-27 ("The 'Unless' clauses which introduce them demonstrate the drafters' intent that § 2-401(2) and (3) are 'default' rules—rules that apply in the absence of contrary agreement.  But any contrary agreement cannot conflict with § 2-401(1). The 'Unless . . .' clauses are to be read as if they said: 'In the absence of such an agreement which explicitly provides to the contrary . . . ,' in which event the 'such' would refer to agreements contemplated by § 2-401(1), including its limitations.  This writer has tinkered with the language and is convinced that there is no logical construction of § 2-401(2) or § 2-401(3) that would permit disobedience to § 2-401(1).  Section 2-401(1) deals with agreements.  Sections 2-401(2) and (3) deal with certain fact patterns in the absence of such an agreement."); Conn. Bank & Trust Co. v. Schindelman (In re Bosson), 432 F. Supp. 1013, 1020 n.24 (D. Conn. 1977) ("Although § 2-401(2) begins with the phrase '[unless] otherwise explicitly agreed,' the prior subsection places limits on the parties' contractual freedom.  Specifically, § 2-401(1) negates any attempt to forestall passage of title beyond the moment of final delivery.").

[5]    See, e.g., Derryberry v. FCA Leasing Corp. (In re DeVita Fruit Co.), 473 F.2d 585, 586-88 (6th Cir. 1973); Usinor Industeel v. Leeco Steel Products, Inc., 209 F. Supp. 2d 880, 882, 886-87 (N.D. Ill. 2002); Conn. Bank & Trust, 432 F. Supp. at 1021; Stewart v. Barry Cnty. Livestock Auction, Inc. (In re Stewart), 274 B.R. 503, 510-11 (Bankr. W.D. Ark  2002), aff'd, 282 B.R. 871 (B.A.P. 8th Cir. 2002); Meade v. Richardson Fuel, Inc., 166 S.W.3d 55, 56, 58 (Ky. Ct. App. 2005).

the conditions articulated in the Title Provision, the effect of the Title Provision was simply a

reservation of a security interest, not a reservation of title, because at the moment the Sales

Agreement was executed, the Equipment had already been delivered to and was in the possession

of Aleris.[6]

### 2.    Passage of Title to the Equipment

Holt argues that title to the Equipment has not passed to Aleris.  However, U.C.C. § 2-

401(3)(b) provides that where a sales transaction requires no delivery of either the sold goods or

any documentation pertaining to such goods, title passes by default to the buyer at the time and

place of contracting.  Comment 4 to § 2-401 explains that

> [t]he factual situations in subsections (2) and (3) upon which
> passage of title turn actually base the test upon the time when the
> seller has finally committed himself in regard to specific goods. . . .
> [S]ubsection (3) turns on the seller's final commitment, i.e. the
> delivery of documents or the making of the contract.

U.C.C. § 2-401 cmt. 4.

Consequently, where the seller has relinquished physical possession of the sold goods

and where the buyer is already in possession of such goods, and where the parties have

contemplated no further action on the part of the seller, the buyer acquires title to such goods at

the moment the sales contract is executed.  See, e.g., In re Gull Air, Inc., 73 B.R. 820, 825

(Bankr. D. Mass. 1987); Malloy v. Brazeal (In re Callahan), No. 07-10070-R, Adv. No. 07-1021-

---

[6]    The analysis is not altered by the fact that Aleris has not paid Holt for the Equipment.
U.C.C. § 2-401(1) makes no exception for the retention of title to goods that have been delivered
but for which the seller has not received payment.  The determinative fact is whether the goods
have been delivered to the buyer.  See, e.g., Derryberry, 473 F.2d at 588; Malloy v. Brazeal (In
re Callahan), No. 07-10070-R, Adv. No. 07-1021-R, 2007 WL 3018946, at *5 (Bankr. N.D.
Okla. Oct. 11, 2007); Associated Indus. v. Keystone Gen., Inc. (In re Keystone Gen., Inc.), 135
B.R. 275, 280 (Bankr. S.D. Ohio 1991) 1013, 1021 (D. Conn. 1977).

R, 2007 WL 3018946, at *6 (Bankr. N.D. Okla. Oct. 11, 2007).  Under facts similar to those in

the case at bar, a bankruptcy court in Massachusetts found that a buyer who had been in

possession of an aircraft pursuant to a lease agreement before contracting to purchase the aircraft

from the seller acquired title to the aircraft upon the parties' execution of the purchase and sale

agreement.  In re Gull Air, 73 B.R. at 821-22, 825.

      The Court is therefore satisfied that the requisite factual predicate for the application of

U.C.C. § 2-401(3)(b) has been established by the Debtor and remains undisputed by Holt.  The

parties entered into a purchase and sale transaction, whereby Aleris agreed to purchase and Holt

agreed to sell the Equipment, after Aleris had already been in physical possession of the

Equipment pursuant to the parties' prior rental arrangement.  Because the Sales Agreement did

not contemplate delivery of the Equipment by Holt, pursuant to § 2-401(3)(b), title to the

Equipment passed to Aleris on January 12, 2009, the date on which the Sales Agreement was

executed.

      Accordingly, the Court finds that, pursuant to the provisions in U.C.C. § 2-401, Aleris

acquired title to the Equipment, at the latest, on the date the Sales Agreement was executed.

Through the operation of the Title Provision, Holt retained merely an Article 2 security interest

in the Equipment.

**B.**      **The Enforceability of Holt's Security Interest in the Equipment**

      Although Holt retained a security interest in the Equipment arising under Article 2, under

Article 9, a seller's security interest must attach to the delivered goods to be enforceable against

the buyer, and it must be perfected to be enforceable against third parties.[7]

---

[7]     U.C.C. § 9-110 provides that a security interest arising under U.C.C. § 2-401 attaches to
the collateral and is deemed perfected so long as the buyer is not in possession of such collateral,

1.      **Attachment of Holt's Security Interest**

Under U.C.C. § 9-203 as it was adopted in Kentucky, a security interest attaches to collateral when the following three conditions are satisfied: (1) the debtor has signed a valid security agreement; (2) the creditor has given value; and (3) the debtor has rights in the collateral.  KY. REV. STAT. ANN. § 355.9-203(2).  Upon attachment, the security interest becomes enforceable against the debtor.  Id. § 355.9-203(1).

With respect to the first requirement, the Court finds that Aleris authenticated a valid security agreement.  The Sixth Circuit Court of Appeals has held that a provision in the contract that provides for title to sold goods to remain in the seller pending full payment by the buyer suffices as a security agreement for the purpose of attaching the seller's security interest to the goods as required by U.C.C. § 9-203(2).  Derryberry v. FCA Leasing Corp. (In re DeVita Fruit Co.), 473 F.2d 585, 588 (6th Cir. 1973).  In reaching this conclusion, the Sixth Circuit reasoned that "[s]ince this interest was created by a writing, signed by representatives of [the buyer], and contained a description of the goods, it was enforceable against [the buyer]."  Id.  Although caselaw is sparse on this issue, it is generally in accord with the holding in Derryberry.[8]  Here, as

---

such that the seller may enforce the security interest against the buyer even in the absence of an authenticated security agreement otherwise required for attachment or a filed financing statement otherwise required for perfection, as mandated by § 9-203(2).  Id. § 355.9-110(1).  Because a security interest that arises through the operation of U.C.C. § 2-401 is non-consensual, there is no need for the seller to show the existence of a security agreement as long as the seller has retained possession of the collateral.  WHITE & SUMMERS, U.C.C. § 30-11 (6th ed. 2010).  Likewise, while the seller is in possession of the collateral, there is no need for perfection to put third parties on notice of the security interest.  Id.  However, once the buyer obtains possession of the sold collateral, the protections of U.C.C. § 9-110 disappear and a seller holding an Article 2 security interest must abide by the rules of attachment and perfection under Article 9 to enforce its security interest in the collateral.

[8]      Similarly, another bankruptcy court held that a letter confirming the terms of the contemplated sale of equipment could serve as a security agreement if combined with other

in Derryberry, the parties executed the Sales Agreement, a written document that provided a description of the Equipment and provided sufficient language to create an Article 2 security interest, and was signed by and is thereby enforceable against Aleris. Thus, the first requirement has been satisfied.

As for the second requirement, the Court finds that Holt has given value in exchange for the security interest because it had relinquished possession of the Equipment to Aleris. There is no dispute that the Equipment is valuable to both parties. Thus, the second requirement has been satisfied.

Finally, with respect to the third requirement, the Court finds that Aleris had rights in the collateral when the security interest was created pursuant to U.C.C. § 9-203(2) because the Debtor was in possession of the Equipment. Conn. Bank & Trust Co. v. Schindelman (In re Bosson), 432 F. Supp. 1013, 1018 (D. Conn. 1977) ("The UCC does not define the term 'rights,' except to specify that it includes 'remedies.' The caselaw establishes the proposition that once a debtor acquires possession of an item of collateral pursuant to a sales contract or like agreement, the debtor has acquired sufficient 'rights' for Article IX purposes.") (citations omitted). Thus, the third requirement has been satisfied. Accordingly, the Court holds that the security interest retained by Holt attached to the Equipment.

---

documents, although the court did not specify to which documents it was referring. In re Phillips, 77 B.R. 648, 649-50 (Bankr. E.D. Tenn. 1987). In contrast, a court can find no authenticated security agreement—and consequently, no attachment—where the Article 2 security interest is created through the reservation of title in an oral sales agreement. Meade, 166 S.W.3d at 57-58; see also N. Ga. Toyota v. Jahn (In re Tom Woods Used Cars, Inc.), 24 B.R. 529, 529-30 (Bankr. E.D. Tenn. 1982) (a seller's alleged intention to retain title was insufficient to reserve an Article 2 security interest in a car sold to a buyer, where the parties executed no formal agreements and exchanged only the buyer's check or draft for the seller's certificate of title).

2.        **Perfection of Holt's Security Interest**

As a matter of law, a security interest must be perfected to provide notice to and be enforceable against third parties.  The purpose of this notice requirement is to discourage and prevent the creation of secret liens.  Marlow v. Oakland Gin Co. (In re The Julien Co.), 128 B.R. 987, 998 (Bankr. W.D. Tenn. 1991) ("In order to be a perfected security interest, enforceable against one occupying the status of the Trustee, [U.C.C. § 2-401] directs that compliance with the provisions of Article 9 governing secured transactions is required.  Such a requirement assures that the UCC's purpose of affording notice to third parties of asserted interests in property is enforced.").  Perfection, which is generally accomplished through the filing of a financing statement with the appropriate Secretary of State, places subsequent creditors on notice of an existing encumbrance.  Stowers v. Mahon (In re Samuels & Co., Inc.), 526 F.2d 1238, 1241-42 (5th Cir. 1976) (en banc), cert. denied, 429 U.S. 834 (1976) ("The [Uniform Commercial] Code's overall plan, which typically favors good faith purchasers, and which encourages notice filing of nonpossessory security interests in personalty through the imposition of stringent penalties for nonfiling . . . ."); Associated Indus. v. Keystone Gen., Inc. (In re Keystone Gen., Inc.), 135 B.R. 275, 282 (Bankr. S.D. Ohio 1991) ("A main purpose of the Uniform Commercial Code is its overall scheme favoring notice filing; a hidden title provides no notice.").

The intention of the parties with respect to the passage of title is not determinative.  See Associated Indus., 135 B.R. at 282.  Instead, the relevant inquiry is whether the seller has retained possession of the collateral.  Once the seller relinquishes physical possession of the collateral to the debtor, the seller "cloaks" the debtor with the "appearance of ownership" of the

collateral.  Meade v. Richardson Fuel, Inc., 166 S.W.3d 55, 58 (Ky. Ct. App. 2005).  To overcome the presumption of the buyer's unencumbered ownership interest in the delivered goods, and to retain an enforceable security interest in such goods, the seller must perfect its security interest to place subsequent creditors on notice of its extant interest.[9]

Under the laws of the State of Kentucky, to perfect a security interest in the collateral that is enforceable against third parties, a creditor must file a U.C.C. financing statement with the Secretary of State in Kentucky.  KY. REV. STAT. ANN. § 355.9-501; Marlow, 128 B.R. at 996-97 ("Obviously, from this language [in Article 9], possession of the collateral or the filing of a UCC-1 financing statement is required for one in the position of this seller to have a perfected security interest.").  Here, there is no evidence that Holt has ever filed a U.C.C. financing statement to perfect its security interest in the Equipment.  Consequently, the Court concludes that Holt has not perfected its security interest in the Equipment.

The Court notes that as between Holt and the prepetition Debtor, Holt's security interest would be enforceable nonetheless because a security interest held by the seller in sold goods need not be perfected to be enforceable against the buyer.  Section 9-201 of the U.C.C. provides that "a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors."  KY. REV. STAT. ANN. § 355.9-201(a); see also Derryberry, 473 F.2d at 588; Anderson v. First Jacksonville Bank, 423 S.W.2d 273, 274

---

[9] An Article 2 security interest that has attached to the collateral is deemed perfected so long as the seller retains possession of the collateral.  Section § 9-309 of the U.C.C. provides that a security interest arising under § 2-401 is deemed perfected when the security interest attaches to the goods and remains perfected so long as the buyer does not obtain possession of the goods. KY. REV. STAT. ANN. § 355.9-309(6).  Here, it is undisputed that Aleris, not Holt, has physical possession of the Equipment, such that Holt may not rely on § 9-309 for satisfaction of the perfection requirement.

(Ark. 1968).  However, because Holt held an unperfected security interest in the Equipment as of the date that the Debtor filed its bankruptcy petition, its security interest is therefore susceptible to avoidance by the Debtor under 11 U.S.C. § 544.  See, e.g., In re Phillips, 77 B.R. at 650; In re Cont'l Fire Trucks, Inc., 33 B.R. 713, 716 (Bankr. D. Mass. 1983).

## C.    Relief from Stay

Upon the commencement of a bankruptcy case, 11 U.S.C. § 362(a) provides for an automatic stay of all actions against the debtor and the debtor's property.  United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 369 (1988).  This provision of the Bankruptcy Code is known as "one of the fundamental debtor protections provided by the bankruptcy laws."  Midlantic Nat. Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 503 (1986) (internal quotation marks omitted).  The automatic stay is intended "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor."  Borman v. Raymark Ind., Inc., 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting St. Croix Condo. Owners v. St. Croix Hotel, 682 F.2d 446, 448 (3d Cir. 1982)).

### 1.    Whether the Equipment is Subject to the Automatic Stay

By its terms, 11 U.S.C. § 362(a) applies only to property of the estate.  Thus, the automatic stay does not protect property in which a debtor holds no interest.  Property of the estate is defined in 11 U.S.C. § 541(a)(1) as "all legal or equitable interests of the debtor in property as of the commencement of the case," subject to several exceptions that do not apply in this case.  Holt contends that the stay does not apply to the Equipment because it maintains that

Holt, and not the Debtor, holds title to the Equipment.  However, as discussed above, the Court

has concluded that title to the Equipment had vested in the Debtor through the operation of 11

U.S.C. § 401 before Aleris filed its bankruptcy petition.  Accordingly, as a matter of law and

contrary to Holt's assertions, the automatic stay does in fact apply to the Equipment.

### 2.        Whether Holt is Entitled to Relief from Stay

Section 362(d)(1) enables a party in interest to request relief from the automatic stay

upon a showing of "cause."  Initially, the Court must determine whether Holt has made a prima

facie showing that it is entitled to the requested relief.  In re RNI Wind Down Corp. et al., 348

B.R. 286, 299 (Bankr. D. Del. 2006) (finding that a prima facie case requires a movant to show

"a factual and legal right to the relief it seeks") (quoting In re Elmira Litho, Inc., 174 B.R. 892,

902 (Bankr. S.D.N.Y. 1994)); see also In re Sonnax Indus., Inc., 907 F.2d 1280, 1285 (2d Cir.

1990) ("If the movant fails to make an initial showing of cause, however, the court should deny

relief without requiring any showing from the debtor that it is entitled to continued protection.").

Here, Holt seeks relief from stay to gain immediate possession of the Equipment.  Under

the circumstances, the only legal theory that could afford Holt immediate possession is the

remedy of replevin.  However, to replevy the Equipment, Holt must establish that it is entitled to

the immediate possession of the goods sought to be replevied.  Stimson's Ex'x v. Tharp, 144

S.W.2d 1031, 1033 (Ky. App. 1940) ("The plaintiff must recover on the strength of his own title,

that is, prove a general or special ownership entitling him to lawful possession.").  As discussed

above, Holt does not hold title to the Equipment as a matter of law.  A district court in Illinois

denied a seller's request to replevy steel for which it received no payment, reasoning that U.C.C.

§ 2-401(2)(a) provided the seller with only a security interest, not an ownership interest, in the

delivered steel.  Usinor Industeel v. Leeco Steel Prod., Inc., 209 F. Supp. 2d 880, 886-87 (N.D. Ill. 2002).  Here, the Court likewise concludes that Holt is not entitled to replevy the Equipment on the strength of its purported security interest.[10]

Furthermore, where a creditor seeks relief from stay and claims an interest in property of the estate, an implicit requirement is a showing by the creditor that its claim is secured.  See In re Elmira Litho, 174 B.R. at 902 ("[T]he secured creditor need only show that it holds a secured claim, as it would under § 362(d)(2), in order to establish a prima facie case, whereupon the burden shifts to the debtor to disprove that cause exists for relief from the automatic stay.").  Here, Holt has not demonstrated that it is entitled to relief from stay because its Article 2 security interest in the Equipment, which is its only interest in the Equipment, is unperfected and thus susceptible to avoidance by the Debtor, which would thereafter leave Holt with only an unsecured claim.

### 3.    Whether "Cause" Exists for Relief from Stay

Assuming arguendo that Holt may nonetheless demonstrate its entitlement to seek relief from the automatic stay, it would still have to show that "cause" exists to warrant such relief. Although § 362(d)(1) does not define "cause," the Third Circuit has held that courts should consider "the totality of the circumstances in each particular case" to determine whether "cause" for relief from stay exists.  Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir. 1997). Specifically, "[t]o establish cause, the party seeking relief from the stay must show that 'balance of hardships from not obtaining relief tips significantly in [its] favor.'"  Atl. Marine, Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.), 298 B.R. 222, 225 (D. Del. 2003)

---

[10]    Holt has made no showing that it is entitled to immediate possession of the Equipment based upon other grounds.

(quoting In re FRG, 115 B.R. 72, 74 (E.D. Pa. 1990)). The bankruptcy courts in this District

apply a hardship balancing test to assess the existence of "cause." In re The SCO Group, Inc.,

395 B.R. 852, 856 (Bankr. D. Del. 2007); see also In re Cont'l Airlines, Inc., 152 B.R. 420, 424

(D. Del. 1993). The three prongs of the balancing test are (1) whether any great prejudice to

either the bankrupt estate or the debtor will result from lifting the stay; (2) whether the hardship

to the non-bankrupt party by the maintenance of the stay considerably outweighs the hardship to

the debtor if the stay is lifted; and (3) whether it is probable that the creditor will prevail on the

merits of its case against the debtor. In re Downey Fin. Corp., 428 B.R. 595, 609 (Bankr. D. Del.

2010); In re Cont'l Airlines, 152 B.R. at 424; In re Rexene Prod. Co., 141 B.R. 574, 576 (Bankr.

D. Del. 1992).

Even if Holt can demonstrate that its security interest entitles it to relief from stay, the

balance of hardships nonetheless weighs against Holt. First, the Debtor has established that it

will suffer harm if the Court lifts the stay and allows Holt to proceed on the basis of its asserted

security interest in the Equipment. The Debtor insists that the Equipment is "essential to its

operations." Thus, any action taken by Holt that may deprive the Debtor of its possession or use

of the Equipment is likely to cause the Debtor severe hardship and to affect its ability to

consummate an effective reorganization.

Second, Holt has not shown that the hardship on Holt in the event that the stay is

maintained considerably outweighs the hardship likely to be suffered by the Debtor if the stay is

lifted or modified. Although Holt has noted that the Equipment is depreciating in value because

of the Debtor's continued use, it has not shown that its continued dispossession would cause it

greater hardship than the hardship on the Debtor in the event that the Debtor is dispossessed of the Equipment.

Finally, Holt has made no showing that it is likely to prevail against the Debtor on the strength of its security interest in the Equipment.  Holt's security interest in the Equipment is unperfected and thus susceptible to avoidance.[11]  Accordingly, the Court holds that Holt has not made an adequate showing of cause sufficient to merit relief from stay.

## V.  CONCLUSION

For the foregoing reasons, the Court will deny the Motion.  An appropriate Order follows.

BY THE COURT:

Dated:          Wilmington, Delaware
                January 31, 2011          _____
                                          Brendan Linehan Shannon
                                          United States Bankruptcy Judge

---

[11]     In the event that the Debtor avoids Holt's unperfected security interest in the Equipment, Holt would nonetheless retain an unsecured claim for the purchase price of the Equipment arising out of the Sales Agreement.